IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERTS IRRIGATION COMPANY, INC.,

                              Plaintiff,                    OPINION AND ORDER

     v.                                                            16-cv-0028-slc

HORTAU CORP. and HORTAU, INC.,

                              Defendants.

_____

     Plaintiff Roberts Irrigation Company, Inc. ("Roberts") has sued defendants Hortau Corp. and Hortau, Inc. (collectively, "Hortau") under theories of unjust enrichment and breach of contract for damages arising from Hortau's alleged breach of a distribution agreement. Citing to an arbitration clause in a distribution agreement between Roberts and Hortau Inc., Hortau has moved under Fed. R. Civ. P. 12(b)(3) to dismiss or stay this action and to compel Roberts to arbitrate pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* *See* Dkt. 13. In the alternative, Hortau moves to dismiss this case for lack of personal jurisdiction or under the doctrine of *forum non conveniens*. Because I find that Hortau has failed to show that the parties had a written arbitration agreement that applies to the instant dispute, and that there is no merit to its jurisdiction and inconvenient forum arguments, the court is denying the motion in both parts.

     One preliminary matter requires court action: Roberts seeks permission to file a sur-reply with respect to Hortau's contention that the arbitration clause survived expiration of the parties' 2008 Distribution Agreement, which Roberts says was raised for the first time in Hortau's reply brief. Dkt. 19. Hortau objects, asserting that the argument on which Roberts seeks to be heard was raised in Hortau's opening brief. Dkt. 20. Hortau is correct, but only to a point. Hortau

raised the argument briefly in its opening brief, dkt. 14, at 9, but did not develop it in any depth until its reply brief.  It is only fair to allow Roberts to respond to the more well-developed argument.  Accordingly, I am granting Roberts's motion and will consider its sur-reply.

In deciding a motion to dismiss, the court accepts all well-pled factual allegations in the complaint as true, *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), and views them in the light most favorable to plaintiff as the non-movant, *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

FACTS

Plaintiff Roberts Irrigation Company is a Wisconsin corporation with its principal place of business in Plover, Wisconsin.  Roberts is engaged in the business of contracting, installing and selling agricultural irrigation products.

Defendant Hortau, Inc. is a Canadian corporation with its principal place of business in Lévis, Quebec.  Defendant Hortau Corp. is a Delaware Corporation with its principal place of business in California.  Hortau, Inc. and Hortau Corp. are in the business of providing goods and services for use in the agriculture industry.  Hortau Corp. is an authorized agent of Hortau, Inc. in its dealings with Roberts.[1]

Roberts and Hortau, Inc. entered into a "Distribution Agreement" on or about February 15, 2008.  Amended Complaint, dkt. 10, exh. A.  The Agreement contains an arbitration provision, § 20, which states:

---

[1] In its Amended Complaint, plaintiff indicates that Hortau, Inc. can be referred to as "Hortau Canada" and Hortau, Corp. can be referred to as "Hortau, Inc.."  These designations are confusing, particularly the designation of Hortau, Corp. as Hortau, Inc.  In light of the alleged agency relationship between the two entities, I refer in this opinion to both defendants collectively as "Hortau," except where individual designation is required.

> Any dispute which arises in the course of or following the
> performance of the present contract will be definitively settled
> under the auspices of the Canadian Commercial Arbitration
> Center, by means of arbitration and to the exclusion of courts of
> law, in accordance with its General Commercial Arbitration Rules
> in force at the time this contract is signed and to which the parties
> declare they have adhered.

The parties further agreed that the agreement would be "construed and interpreted according to

the laws of the province of Quebec, Canada, and the laws of Canada applicable therein."  § 17.

> Section 12.A of the Agreement is a termination provision which states:

> The term of this Agreement shall begin and end as of the dates
> indicated in Attachment "A." Annual renewal will be granted from
> year to year only through a new copy of Attachment "A" duly
> executed by both Parties prior to the date of termination.

Attachment "A" identified Roberts' territory, minimum inventory level and annual sales target

and listed the products and corresponding discount being offered by Hortau.  It also provided

that, "[i]n reference with section 12 (Effective date and termination), this Agreement shall begin

on February 15th 2008 and shall terminate on April 30th 2009."  Section 15.B provides that "[n]o

change of any terms and conditions herein will be valid unless in writing signed by an authorized

representative of each party."

The Distribution Agreement expired by its terms on April 30, 2009, when the parties

failed to renew it.  Am. Comp., ¶¶10-11.  However, the parties continued to do business with

each other.  Under the terms of this "implied" distributorship agreement, the parties agreed that:

(1) Roberts would continue to maintain a minimum inventory of the products; (2) Roberts

would makes sales of the products within the same territory, (3) Roberts would market and

promote Hortau products within the same territory; (4) Roberts would service the products

within the same territory; (5) Roberts would retain the exclusive right to sell Hortau products

in the same territory; and (6) Hortau would provide products, payment, marketing materials and other related support to Roberts.  In addition, the parties agreed that Hortau would pay Roberts 40% for its service of "web-tx3" products.

Roberts alleges that Hortau has breached this implied distributorship agreement by failing to pay service commissions or repurchase inventory.  In addition, it asserts that Hortau has been unjustly enriched by performance under the agreement.  *Id*. at ¶¶ 25-40.

Roberts filed its complaint on November 30, 2015, in the Circuit Court for Portage County, Wisconsin, naming only Hortau Corp. as a defendant.   On January 12, 2016, Hortau Corp. removed the matter to this court, but objected to the court's personal jurisdiction on the ground of improper service.  With Hortau Corp.'s agreement, on March 14, 2016 Roberts filed an amended complaint in which it added Hortau, Inc. as a defendant.  The Hortau defendants now move to dismiss the amended complaint or to stay the proceedings pending arbitration, pursuant to Federal Rule of Civil Procedure 12(b)(3).

OPINION

I.  **Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Under the FAA, federal courts must compel arbitration if any issues are "referable to arbitration under an agreement in writing for such arbitration," so long as the court is "satisfied that the

4

issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3.  Thus, to succeed on its motion, Hortau must show:  (1) a valid, written agreement to arbitrate exists; (2) the instant dispute falls within the scope of that agreement; and (3) Roberts has refused to proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006).[2]  Any doubt concerning the scope of arbitrable issues under an arbitration agreement should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).[3]

Hortau's motion to compel arbitration rests on the arbitration provision in the February 2008 Distribution Agreement.  Hortau argues that even though the contract expired in April 2009, the parties effectively renewed it by continuing to do business with each other under essentially the same terms.  Therefore, argues Hortau, the Agreement and all its terms--including the arbitration provision—remain in force.

It is true that when parties to a contract continue their course of dealing after the contract's expiration, "an implication arises that they have mutually assented to a new contract containing the same provisions as the old."  17A Am. Jur. 2d **Contracts** § 605 (1991).  But even

---

[2]  Similarly, a district court must enforce an agreement to arbitrate under the Convention when the following jurisdictional requirements are met: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration within the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or the commercial relationship has some reasonable relation with one or more foreign states.  *Felland v. Clifton*, No. 10-CV-664-SLC, 2013 WL 3778967, at *4 (W.D. Wis. July 18, 2013) (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 n. 7. (11th Cir.2005) (citations omitted)).

[3]  When deciding whether the parties agreed to arbitrate an issue, federal courts apply state-law principles of contract formation.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  When deciding which state's law applies, courts normally respect the law chosen in the agreement; in this case, that is Canada.  In their briefing, however, neither side cites any Canadian law; instead, the parties reference federal, Wisconsin, and other state law.  I have followed the parties' lead and considered the law that they cited, which in many instances has turned out to be irrelevant.

if Hortau is correct that the parties continued to deal with each other under the same terms as before their agreement expired, this principle does not help Hortau in the present context. Agreements to arbitrate must be in writing. 9 U.S.C. § 2 ("A *written* provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ") (emphasis added); *id.* § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement *in writing* for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .") (emphasis added); *id.* § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a *written* agreement for arbitration may petition any United States district court . . . .") (emphasis added).  Whatever the terms of the new, post-expiration agreement between Hortau and Roberts, Hortau has adduced no evidence that those terms–including any post-expiration agreement to arbitrate–ever were written down.

The Court of Appeals for the Seventh Circuit considered nearly identical facts in *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601 (7th Cir. 2002), a case that neither side cites in its briefs.  As in this case, the parties in *Nissan* had a written dealership agreement that included an arbitration clause.  *Nissan*, 307 F.3d at 602.  The agreement expired without renewal, but the parties continued doing business under essentially the same terms.  *Id.*  More than a year later, Nissan informed M'Lady that its authorization to act as a Nissan dealer would be revoked.  *Id.*  M'Lady protested, and Nissan successfully moved in federal court to compel arbitration.  On appeal, however, the court of appeals vacated the district court's opinion and

6

remanded the case for further development of the record, pointing out that "Nissan points us to no written agreement other than the one that has expired, and agreements to arbitrate must be in writing." *Id*. at 604-05 (citing 9 U.S.C. § 4).

On remand, Nissan still did not produce any written agreement containing an arbitration clause other than the dealer agreement that had expired.  Instead it made the same argument that Hortau makes here:  an agreement to arbitrate could be implied from the parties' continued course of dealing.  *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 994 (7th Cir. 2007) (*Nissan II*).  On appeal from the district court's order denying the motion to compel arbitration, the court of appeals explained why Nissan was wrong:

> Nissan has failed again to demonstrate that the parties had a written agreement to arbitrate that covered the subject of the termination dispute. Nissan's first argument is that M'Lady failed to show on remand that the parties formed an oral agreement that specifically abandoned the terms of Amendment 4. This argument misses the mark, though, because M'Lady's only burden on summary judgment was to demonstrate that Amendment 4, the written agreement to arbitrate, expired and that there was no subsequent written agreement governing the parties' relationship that contained an arbitration clause. True, the parties continued to conduct business after May 1, 1999. Nissan continued to supply the M'Lady dealership with cars and trucks, and M'Lady continued to sell Nissan cars and trucks. Some kind of agreement governed the relationship but there is no evidence that part of that agreement was a promise to arbitrate any disputes . . .. The salient fact is that there is no evidence of a written agreement to arbitrate that survived the expiration of Amendment 4.

> *Id*. at 994-95.

As in *Nissan*, Hortau has produced no evidence that the parties renewed their 2008 Distribution Agreement in writing, as was required by the Agreement's renewal provision. Instead, Hortau asks this court to *imply* a new agreement to arbitrate from the parties' continued

course of dealing after they allowed the 2008 agreement to expire in April 2009.  As *Nissan* makes clear, however, the FAA means what it says:  agreements to arbitrate must be in writing and cannot be implied.[4]  Accordingly, the court rejects Hortau's first argument.

Taking a different tack, Hortau argues that the parties expressly agreed that the arbitration clause would survive the expiration of the 2008 Distribution Agreement.  Hortau cites the contract language which provided that all disputes arising during the performance of the contract and "following the performance" of the contract must be arbitrated.  Hortau supports its argument with citations to *Nolde Bros. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 250-54 (1977), and *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, International, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993), both of which found that post-expiration disputes were subject to resolution under the arbitration provisions of the respective expired contracts.  In both cases, however, the courts first determined that the disputes "arose out of" the contracts at issue and therefore were covered by the broad language of the contracts' arbitration provisions.  *Nolde Brothers*, 430 U.S. at 245, 254 (arbitration provision provided that "any grievance" arising between the parties was subject to binding arbitration); *Sweet Dreams*, 1 F.3d at 641 (arbitration clause covered "[a]ny disputes arising out of the agreement").  *See also Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205 (1991) (clarifying the Court's holding in *Nolde* as applying "only where a dispute has its real source in the contract").  The courts determined that the broad scope of the arbitration provisions, when considered in

---

[4] Although Hortau has not attempted to distinguish the FAA from the Convention, I note that the Convention also applies only to written arbitration agreements.  Convention, art. II(1) (providing that a contracting state "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen . . .").

conjunction with the absence of language limiting the duty to arbitrate to the term of the contract, covered the post-expiration disputes at issue. *Nolde Brothers*, 430 U.S. at 254 ("the failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship"); *Sweet Dreams*, 1 F.3d at 643 (7th Cir. 1993) (parties "used language that evinces an intent to commit to arbitration any dispute connected with the contract irrespective of when it occurs").

At bottom, deciding whether the parties agreed to arbitrate post-expiration disputes hinges on the contract language, for "a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so." *Nolde Brothers*, 430 U.S. at 250-51 (citations omitted). In this case, the parties agreed to arbitrate "[a]ny dispute which arises in the course of or following the performance of the present contract[.]" This provision could be read to impose only a temporal limitation on *when* a dispute must arise, with no limit on *what* kind of dispute must be arbitrated. But reading the provision to require arbitration of "*any* dispute . . . following the performance*" of the Distribution Agreement, could led to absurd results. For example, if in the year 2028, Roberts and Hortau separately patented an irrigation device and then leveled against each other competing claims for patent infringement, one of them could insist that the claims must be arbitrated, even if neither party had obtained its patent until decades after the parties had stopped doing business with each other. *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 822 (7th Cir. 2006) (when interpreting a contract, courts looks first to the plain meaning of the provision and strives to avoid absurd results).

Wisely, neither party advocates for such an interpretation.  Instead, at least in its initial brief, Hortau appeared to concede that the arbitration clause is limited in substantive reach to those disputes "arising from" or having some connection to the Distribution Agreement.  Def.'s Br. in Supp., dkt. 14, at 10 ("Roberts clearly alleges claims *arising from* the parties' distribution agreement.") (emphasis added).  On reply, however, Hortau broadens its interpretation, declaring that the arbitration clause governs "any dispute arising from *the parties' business relationship* even after expiration of the Agreement."  Def.'s Reply Br., dkt. 18, at 7 (emphasis added).

Hortau's broader interpretation cannot be sustained.  First, it has waived the argument by failing to develop it in any way.  Hortau's single-sentence, self-serving declaration as to the scope of the arbitration provision is not enough.  *United States v. Foster*, 652 F.3d 776, 792 (7th Cir. 2011) ("As we have said numerous times, undeveloped arguments are deemed waived[.]") (internal quotation marks and citation omitted).

Waiver aside, Hortau's expansive reading would mean that any dispute arising between the parties years or even decades after the agreement expired would be arbitrable, so long as the parties were still engaged in some sort of "business relationship."  In interpreting a contract, however, courts should not "lock parties into a given set of rights and obligations for long or indefinite periods without some clear indication that this was actually intended by the parties." *Consumers Ice Co. v. U.S.*, 475 F.2d 1161, 201 Ct.Cl. 116 (1973).  Hortau has not provided that clear indication here.

To the contrary, when read as a whole, the Distribution Agreement supports Roberts' (and Hortau's initial) contention that only disputes connected to the "the present contract," *i.e.* the Distribution Agreement, are arbitrable.  First, the arbitration provision applies to disputes

10

arising "in the course of or following the performance of *the present contract*," emphasis added. Although inartfully worded, the parties' inclusion of the phrase "the present contract" provides strong evidence that they intended the duty to arbitrate to extend to those disputes related to performance under the terms of Distribution Agreement and not some other business arrangement between the parties. Second, as Roberts points out, where the parties intended a specific provision to survive expiration of the Distribution Agreement, they said so. Specifically, the parties agreed that two provisions–Section 10 and 11, which govern the use of trademarks and intellectual property, respectively–were to "remain in force after termination of the Agreement for whatever reason." Agreement, dkt. 10-1, ¶13. No similar carve-out exists for the arbitration provision. In the context of the Agreement as a whole, the only reasonable way to read the arbitration provision is that it covers disputes arising out of performance under the terms of the Distribution Agreement, even if these disputes arise after performance.

To the extent that Hortau may be arguing that the instant dispute "arises from" the Distribution Agreement because the terms of the parties' post-expiration relationship are the same in all material respects, this argument fails under *Litton,* 501 U.S. at 206. In that case, the Court rejected a Union's contention that postexpiration grievances that arose from terms and conditions of employment that remained in place as a result of the NLRA's prohibition on unilateral changes after expiration of a collective bargaining agreement were arbitrable under the expired agreement. *Id*. The Court clarified that the presumption in *Nolde* that postexpiration disputes are arbitrable applies only to "disputes arising under the contract," explaining:

> Any other reading of *Nolde Brothers* seems to assume that postexpiration terms and conditions of employment which coincide with the contractual terms can be said to arise under an expired contract, merely because the contract would have applied to those

11

> matters had it not expired. But that interpretation fails to recognize that an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied.
>
> *Id.*

In this case, there is no dispute that the Distribution Agreement expired by its terms when the parties failed to renew it in writing. Thus, even if the current disputes between the parties concern terms identical to those set out in the Agreement, they nonetheless do not "arise from" the parties' Distribution Agreement.

In sum, Hortau has failed to show that the parties had a written agreement to arbitrate their present dispute. Accordingly, its motion to compel arbitration is denied.


## II.  Personal Jurisdiction

Hortau insists that all of Roberts's allegations are connected to the 2008 Agreement and therefore must be arbitrated. In the event this court finds to the contrary, Hortau argues, then the complaint must be dismissed because Roberts has failed to allege sufficient facts in its complaint to support a finding that this court can exercise general jurisdiction over either of the Hortau defendants. *See generally International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

This argument does not make much sense. As Hortau acknowledges, "general" jurisdiction, which asks if "the [defendant's] affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State[,]" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)), is distinct from "specific," or conduct-linked jurisdiction, which asks whether the cause of action arises from or is related to the defendant's contacts with

the forum. *Goodyear*, 564 U.S. at 919. Roberts has alleged that it had a relationship with Hortau in which Roberts agreed to distribute Hortau's products in Wisconsin under certain agreed-upon terms and that Hortau breached this agreement. Roberts asserts claims for breach of contract and unjust enrichment based upon Hortau's alleged failure to repurchase inventory and pay service commissions as promised under the parties' agreement. These causes of action arise from Hortau's contacts with Wisconsin. Because Roberts's allegations are sufficient to establish specific jurisdiction, Hortau's challenges to general jurisdiction are beside the point.

### III. *Forum Non Conveniens*

Finally, Hortau argues that dismissal is appropriate under the doctrine of *forum non conveniens*, which authorizes a district court to dismiss a case over which it normally has jurisdiction if in doing so "it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill–Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). Two conditions must be met under the doctrine of *forum non conveniens*: (1) there must exist an alternative forum that has jurisdiction over the case that is both available and adequate, and (2) the balance of relevant private and public interests must weigh in favor of dismissal. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). Dismissal is proper if the chosen forum would impose "oppressiveness and vexation to a defendant" that is "out of all proportion to plaintiff's convenience." *Id.* (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)) (internal quotation marks omitted).

Hortau's argument fails from the get-go. It argues that a more appropriate forum for Roberts's claims is the Canadian Commercial Arbitration Center because that is what the parties

13

agreed to in the 2008 Agreement and because the parties specified that their disputes would be governed by Canadian law.  However, this argument presupposes that the arbitration clause in the 2008 Dealership Agreement governs the instant dispute, a showing that Hortau has failed thus far to make.  Hortau does not suggest that this case should be heard in a Canadian *court* and it does not show why it would be unduly oppressive to require Hortau to litigate a case in a Wisconsin court when that case arises from an ongoing dealership arrangement with a Wisconsin company that sold and serviced Hortau's products in Wisconsin.  The motion to dismiss on the ground of *forum non conveniens* is denied.


ORDER

It is ORDERED that:

1.  Plaintiff's motion for leave to file a sur-reply, dkt. 19, is GRANTED; and

2.  Defendants' motion to dismiss this case or compel arbitration, dkt. 13, is DENIED.


Entered this 20th day of June 2016.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

14